Ronald H. RHODES, Appellant,

v.

UNITED STATES, Appellee.

No. 7314.

District of Columbia Court of Appeals.

Argued April 9, 1975.

Decided April 1, 1976.

Henry J. Monahan, Rockville, Md., appointed by this court, for appellant.

Nicholas Gilman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and Stuart M. Gerson, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

NEBEKER, Associate Judge:

In this appeal from a conviction of first-degree burglary,[1] and three counts of robbery,[2] appellant contends that the trial court erred (1) by improperly restricting appellant's right to cross-examine government witnesses, and (2) by refusing to give the requested claim of right instruction to the jury. We conclude that no reversible error was committed, and affirm.

On the afternoon of August 1, 1972, Lamont Tazel was conversing with a neighbor, Earl Byrd, in Tazel's apartment. During the conversation, Tazel responded to a knock on the front door and was met by appellant who was clad in a khaki uniform and who claimed that he had a package for Tazel. After the door had been unchained, appellant and two concealed companions, Curtis Smith and Robert Howard,[3] forced their way inside the apartment. At least two shots were fired by appellant's companions. Tazel was struck by each of the intruders while being

1. D.C.Code 1973, § 22–1801(a).

2. D.C.Code 1973, § 22–2901.

3. Appellant and his companions were charged in a 12-count indictment and were jointly tried and convicted in a 7-day trial during

January 1973. Smith's conviction was affirmed in *Smith v. United States*, D.C.App., 330 A.2d 519 (1974), and Howard's appeal (No. 7196) was dismissed at his request on February 6, 1974.

marched around his apartment in search of money, narcotics, and weapons. Shortly thereafter, Gilbert Batten, a friend of Tazel, arrived at the apartment. He was ordered inside at gunpoint and restrained on the floor with the other victims. The intruders robbed Tazel, Byrd, and Batten, and collected cash in excess of $500.[4]

Police officers arrived at Tazel's apartment while the offenses were in progress. Appellant and his companions were arrested on the scene. Tazel was also arrested, but for possession of marijuana, cocaine, and narcotics paraphernalia. Subsequently, Tazel was granted use immunity from prosecution for events surrounding the robbery.

I

Appellant, like his codefendant Smith, contends that the trial court erred by refusing to give a claim of right instruction to the jury.[5] He maintains that this refusal in conjunction with two other errors caused him substantial prejudice.[6] During the trial court proceedings, appellant and his companions vacillated between conflicting explanations of their actions and motives. The version that went to the jury was that Tazel sold Howard some adulterated narcotics for $30, and that appellant and his companions went to Tazel's apartment to obtain a refund of the purchase price.[7]

■ The standard for determining whether a particular defense instruction is

required on request was articulated in *Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967), *quoting* from *Stevenson v. United States*, 162 U.S. 313, 315, 323, 16 S.Ct. 839, 40 L.Ed. 980 (1896):

> [A]n accused is entitled to an instruction . . . if there is "any evidence fairly tending to bear upon the issue . . .", however weak, and that the court may not intrude on the province of the jury which may find credibility in testimony that the judge may consider completely overborne by the "simply overwhelming" evidence of the prosecutor. . . .

*See also Fleming v. United States*, D.C. App., 310 A.2d 214, 218 (1973); *United States v. Daniels*, 141 U.S.App.D.C. 223, 226, 437 F.2d 656, 659 (1970); *Brooke v. United States*, 128 U.S.App.D.C. 19, 24, 385 F.2d 279, 284 (1967). In the instant case, the record is devoid of evidence which would support a claim of right instruction. This record was so viewed by this court as to appellant's codefendant in *Smith v. United States*, D.C.App., 330 A.2d 519, 521 (1974), and, of course, we adhere to that ruling.

II

■ The other contention meriting discussion in the text is that the trial court erred by restricting the appellant's cross-examination of a government witness. The appellant maintains that he was not allowed to show possible bias by revealing

---

4. Tazel testified that approximately $550 was taken from his apartment and person. Batten and Byrd stated that their wallets, containing $23 and $22 respectively, were taken.

5. District of Columbia Bar Ass'n Criminal Jury Instructions for the District of Columbia, No. 5.03 (2d ed. 1972).

6. Appellant contends that the trial court erred (1) by prohibiting discussion of his codefendants' testimony in the closing argument of his defense, and (2) by quashing appellant's subpoenas for sundry police officers. These issues are inextricably con-

nected to the claim of right defense. We hold that appellant failed to establish a plausible basis for such a defense and simultaneously reject these contentions. *See Smith v. United States, supra* note 3.

7. Prior to the presentation of the defense, defendants repudiated a theory which maintained that Tazel was a narcotics dealer who received money that did not rightfully belong to an unlawful dealer, and therefore they were justified in appropriating the monetary proceeds of Tazel's illegal drug business.

that Tazel was under a charge in the District Court for the possession and sale of narcotics.[8] We note the importance of this issue as expressed by Chief Justice Burger in *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974):

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witnesss as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." . . . We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. . . . [Citation omitted.]

*See also Alford v. United States*, 282 U.S. 687, 691–92, 51 S.Ct. 218, 75 L.Ed. 624 (1931). "It is always open to a party to undertake a demonstration of bias or testimonial motivation—a form of bias—of one who testifies for his adversary." *Tinker v. United States*, 135 U.S.App.D.C. 125, 127, 417 F.2d 542, 544, *cert. denied*, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969) (footnote omitted). *See also Best v. United States*, D.C.App., 328 A.2d 378, 381 (1974); *White v. United States*, D.C.App., 297 A.2d 766, 768 (1972); *Davenport v. District of Columbia*, D.C.Mun.App., 61 A.2d 486, 489 (1948); *Blair v. United States*, 130 U.S.App.D.C. 322, 324–25, 401 F.2d 387, 389–90 (1968); *Wynn v. United States*, 130 U.S.App.D.C. 60, 62, 397 F.2d 621, 623 (1967). We cannot escape the conclusion that the trial court erred by prohibiting the appellant from inquiring on cross-examination into the federal narcotics charge that was pending against Tazel. *See Alford v. United States, supra*, 282 U.S. at 693, 51 S.Ct. 218; *Farkas v. United States*, 2 F.2d 644, 647 (6th Cir. 1924).[9] We reject the trial court's ruling that the question was collateral and excludable as to the issue of bias. *See Best v. United States, supra* at 381; *Villaroman v. United States*, 87 U.S.App.D.C. 240, 241, 184 F.2d 261, 262 (1950).

In determining the prejudice of this error, we heed the counsel of *Johnson v. United States*, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943) (Frankfurter, J., concurring):

> In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.

We have so scrutinized all the evidence and appellant's cross-examination of the complaining witnesses. We conclude that appellant " 'received a fair trial even if not a perfect trial' ". *See Best v. United States, supra* at 383. *See also Hampton v. United States*, D.C.App., 318 A.2d 598, 601 (1974); *United States v. Pugh*, 141 U.S.App.D.C. 68, 71, 436 F.2d 222, 225 (1970).

---

8. Tazel was charged in a four-count federal indictment with two counts of possession, and two counts of sale of marijuana. The alleged offense occurred in May 1972, prior to the robbery. The indictment, however, was returned subsequent to August 1, 1972, the date of the instant offenses.

9. *See also United States v. Leonard*, 161 U.S. App.D.C. 36, 43–44, 494 F.2d 955, 962–63 (1974); *State v. Ponthier*, 136 Mont. 198, 346 P.2d 974, 978 (1959); *People v. Dillwood*, 4 Cal.Unrep.Cas. 973, 39 P. 438, 439 (1895); McCormick, Law of Evidence § 40 at 79–80 (2d ed. E. Cleary 1972); 3A Wigmore, Evidence § 967 at 814 n. 2 (Chadbourn rev. 1970).

Appellant was permitted to cross-examine Tazel extensively regarding his possession of narcotics paraphernalia and his possession and use of marijuana and cocaine on the date of the robbery. Inquiry was also directed toward Tazel's arrest, arraignment, bond, charge, and subsequent grant of use immunity from prosecution with regard to events surrounding this controversy. It must be remembered also that "[o]nce a reasonable opportunity to prove bias has been afforded a party, the trial judge has the discretion to control the extent of the proof." *Blair v. United States, supra,* 130 U.S.App.D.C. at 325, 401 F.2d at 390 (footnote omitted). *See also United States v. Mackin,* 163 U.S.App.D.C. 427, 437, 502 F.2d 429, 439 (1974); *Tinker v. United States, supra,* 135 U.S.App.D.C., at 127, 417 F.2d at 544. Appellant impeached Tazel by delving into his prior convictions. He was allowed to " 'substantially and fairly' " exercise his right of cross-examination concerning narcotics matters elicited from Tazel on direct examination. *See United States v. Pugh, supra,* 141 U.S.App.D.C. at 71, 436 F.2d at 225.

The instant case is unlike *Davis v. Alaska, supra; White v. United States, supra;* and *Wynn v. United States, supra,* wherein the government's case was predicated upon a key prosecution witness. Here, both Byrd and Batten testified that they were robbery victims. Their testimony was not only mutually corroborative, but of like impact as to the testimony of Tazel. Further, the law enforcement officers apprehended appellant and his companions during the course of their crimes. In addition appellant's entire defense was based on an invalid theory that he was acting under a claim of right shield. *See* note 6, *supra.*

Under these circumstances, and in the context of this extensive trial, we conclude that the facts before us establish lack of prejudice beyond a reasonable doubt. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[10] *See also Best v. United States, supra; Hazel v. United States,* D.C.App., 319 A.2d 136 (1974); *Hampton v. United States, supra; United States v. Pugh, supra.*

We are mindful that a conclusion of harmless constitutional error is easy to articulate and that care must be taken to avoid a rote application of the concept. A helpful rule of thumb for appellate court guidance in applying the lubricant of that doctrine is found in a well-reasoned work by Justice James Duke Cameron and Jones Osborn II entitled, *When Harmless Error Isn't Harmless.*[11]

Justice Cameron's article concludes[12] that before an appellate court applies the harmless constitutional error doctrine, three questions must be answered consistent with that application. The first question in this atypical "fact-weighing" and "fact-finding" appellate process is, "when the facts are weighed, is it clear beyond a reasonable doubt that the defendant is guilty as charged?", or as convicted? We are satisfied that from this record appellant's guilt is compelled. The second question is, "did the error contribute to the guilty verdict, and if so, to what degree?" To answer this question, we must "assume the subjective attitude of the jury to determine if the evidence, without the error, would suffice to support the guilty verdict." (Footnote omitted.) In any view,

---

10. In applying the harmless constitutional error rule, we have based our judgment "on our own reading of the record and on what seems to us to have been the probable impact of the [curtailed cross-examination] on the minds of an average jury." *See Harrington v. California, supra,* 395 U.S. at 254, 89 S. Ct. at 1728.

11. Law and the Social Order, 1971 Ariz. State L.J. 23.

12. *Id.* at 39–40.

we believe the evidence will do just that. The third question is, assuming answers to the first two are consistent with application of the doctrine, "do public policy reasons require reversal?" In light of what we have said and quoted above respecting this error, we are satisfied that there is no "danger of deteriorating our procedural [or substantive] safeguards by ignoring their breach" in this case.

Accordingly, the judgment of conviction is

*Affirmed.*