**Ronald McKINNON, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 86-1034.**

District of Columbia Court of Appeals.

Submitted Oct. 25, 1988.
Decided Nov. 28, 1988.

Andrew C. Drew was on the brief for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, FERREN and SCHWELB, Associate Judges.

FERREN, Associate Judge:

According to the government's evidence at trial, appellant slashed the throat of his girlfriend from ear to ear. Although she survived the initial assault, she died suddenly six weeks later from hepatitis apparently contracted as a result of the treatment of her wounds. A jury convicted appellant of first degree premeditated murder while armed, D.C.Code §§ 22-2401, -3202 (1981), and the court sentenced him to twenty years to life imprisonment. Because the victim died of hepatitis rather than directly from the wounds appellant had inflicted, appellant challenges his conviction. He claims that the hepatitis acted as an "intervening cause" between the injuries and her death and thus relieves him of criminal responsibility for her death. We conclude that the hepatitis was not an unforeseeable consequence of appellant's actions and thus does not constitute an intervening cause that would relieve him of criminal responsibility. We accordingly affirm.

## I.

In the early morning of July 11, 1985, appellant dragged his girlfriend, Michelle Wilkerson, into an alley and slashed her throat twice. Bleeding profusely, Ms. Wilkerson staggered into a neighboring apartment building. Later, at the hospital, she was given a tracheotomy to assist her breathing. Because Ms. Wilkerson's blood pressure was so low and she had lost 60% of her blood, she received six units of packed red blood cells during the surgery to repair her throat and two more units later. She also received a variety of medications to prevent infection, including Mefoxin, as well as medication to reduce pain, including Demerol. Her treating physician, Dr. Magnant, testified that these treatments, especially the blood transfusions, were necessary to save Ms. Wilkerson's life.

Ms. Wilkerson spent eighteen days in the hospital. By the time she was discharged, her neck wounds were healing normally although she still was breathing with the assistance of a tracheotomy. During the time she was readmitted to the hospital to close the tracheotomy, she began complaining of nausea and vomiting. She became jaundiced and went into respiratory and cardiac arrest while still at the hospital. The medical witnesses agreed that she died from fulminating hepatitis, almost total liver failure. Tests showed that the hepatitis was neither type A nor type B and thus was non-A, non-B.

The main dispute at trial concerned the causal link between the hepatitis and the injuries appellant had inflicted on Ms. Wilkerson. Dr. James Dibdin, the doctor who conducted the autopsy and an expert in forensic medicine, testified that Ms. Wilkerson died as a result of complications resulting from the neck wounds. Specifically, he stated the hepatitis was probably a result of several factors, most likely the drug therapy. Dr. Leslie Marion, an expert in internal medicine and gastrology, testified for the prosecution that in his opinion Ms. Wilkerson had contracted non-A, non-B viral hepatitis from the blood transfusions. He stated that Mefoxin can cause cholestic hepatitis but concluded that the enzyme levels in Ms. Wilkerson's blood were inconsistent with this type of hepatitis. Dr. William Brownlee, a medical expert, testified for the defense. He stated that Ms. Wilkerson's hepatitis could have had many sources, including the blood transfusions or medications, or she already could have had the hepatitis at the time she was wounded. In his opinion, she most likely contracted the hepatitis from the Mefoxin. He ac-

knowledged, however, that hepatitis was a known risk from blood transfusions. In fact, all the doctors who testified on the subject stated that hepatitis is a known, if small, risk from blood transfusions, and Dr. Marion's testimony indicated that 2% to 5% of the patients with hepatitis die.

II.

Appellant contends the government did not prove beyond a reasonable doubt that he caused the death of Ms. Wilkerson. In every criminal case, the government has the burden of showing that the defendant's conduct not only was a cause in fact of the harm for which he or she is charged but also was the proximate, or legal, cause of that harm. Generally speaking, a defendant's conduct will be the proximate cause of an injury, even though the particular injury was not intended, if the "variation between the result intended ... and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result." 1 W. LaFave & A. Scott, Jr., Substantive Criminal Law § 3.12, at 390 (1986). This generality, however, does not take us very far.

The question of proximate cause in criminal cases has not received extensive discussion in this jurisdiction. In *Baylor v. United States,* 407 A.2d 664 (D.C.1979), we examined the problem of proximate cause in the context of the medical treatment of wounds caused by a beating. The defendant, Baylor, contended that the hospital's failure to operate on the victim until two hours after her admission to the emergency room, coupled with the surgeon's negligent laceration of the pancreas, was the proximate cause of death. We disagreed. We said that, as a general rule, medical treatment—including negligent medical treatment—that contributes to or immediately leads to death is not an intervening cause that relieves a defendant from criminal responsibility for the death, because even negligent medical treatment is a foreseeable consequence of injury. *Id.* at 668. We acknowledged, however, that a physician's gross negligence can provide an exception to the rule, implying that such negligence should not be considered foreseeable. *See id.* at 669. But this exception will apply only if the death resulted solely from the gross negligence. *Id.* In affirming Baylor's conviction for manslaughter, we concluded that the evidence was insufficient for a finding of gross negligence in medical treatment. We added that, even if there had been such negligence, it would not have been the sole cause of death because the initial wound by the defendant substantially contributed to the death. *Id.* at 670.

The gross negligence exception is not applicable to this case because appellant does not argue that the hepatitis resulted from grossly negligent, or even negligent, medical treatment. Rather, appellant argues that the victim, who had recovered and was on the mend, died from a rare form of hepatitis that was not reasonably foreseeable and thus constituted an intervening cause of death.

We have not ruled on what kinds of acts, other than grossly negligent medical treatment, caused by a third party or by non-human action, can constitute an intervening cause that relieves a defendant who causes injury from responsibility for ensuing death. But *Baylor*'s reliance on foreseeability reflects the rule on proximate cause generally followed in many jurisdictions. *See, e.g., State v. Spates,* 176 Conn. 227, 405 A.2d 656 (1978), *cert. denied,* 440 U.S. 922, 99 S.Ct. 1248, 59 L.Ed.2d 475 (1979) (death from heart attack "foreseeable and natural result" of defendant's tying up robbery victim with announced history of heart attacks); *State v. Dixon,* 222 Neb. 787, 387 N.W.2d 682 (1986) (same); *People v. Flenon,* 42 Mich.App. 457, 202 N.W.2d 471 (1972) (death caused by hepatitis attributable to blood transfusion necessary to treat shotgun wound was foreseeable consequence of injury, not intervening cause). A defendant is therefore criminally responsible if "the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused." *People v. Kibbe,* 35 N.Y.2d 407, 412, 362 N.Y.S.2d 848, 851–52, 321 N.E.2d

773, 776 (1974) (citation omitted), *rev'd on other grounds,* 534 F.2d 493 (2d Cir.1976), *rev'd,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed. 2d 203 (1977).[1] Although other formulations of the proximate cause rule are possible,[2] we extend the rule in *Baylor* and conclude that a criminal defendant proximately causes, and thus can be held criminally accountable for, all harms that are reasonably foreseeable consequences of his or her actions.

In this case, appellant argues that the type of hepatitis here (non-A, non-B) was so unusual that it was not reasonably foreseeable and thus broke the causal chain between his actions and Ms. Wilkerson's death. We disagree. All of the expert witnesses testified that the most likely cause of the hepatitis was the treatment necessitated by the wounds appellant had inflicted. One expert, Dr. Marion, testified that the blood transfusions probably caused the hepatitis, whereas the other two experts, Dr. Dibdin and Dr. Brownlee, testified that the drug therapy was the most likely cause of the hepatitis. All experts agreed, however, that blood transfusions carry with them the risk of hepatitis, even if a small risk, which cannot be screened. In particular, Dr. Brownlee, the defense medical expert, testified on cross-examination that he would not disagree with a study showing that "5 to 15 percent of the total amount of people who get one to five units of blood develop[ ] non-A, non-B hepatitis," and Dr. Marion's testimony made clear that hepatitis can cause death.

Based on this evidence, we sustain the trial court's refusal to grant appellant's motion for judgment of acquittal. A jury reasonably could have found that appellant's criminal assault necessitated surgery and related treatment that, even without negligence, could have caused non-A, non-B viral hepatitis that resulted in Ms. Wilkerson's death. As the expert testimony has made clear, these were not unforeseeable consequences of appellant's attack. *See Flenon,* 42 Mich.App. at 462–63, 202 N.W.

1. Federal habeas review did not address the validity of the New York courts' foreseeability rule for establishing proximate cause. In *Henderson v. Kibbe,* 431 U.S. 145, 156–57, 97 S.Ct. 1730, 1737–38, 52 L.Ed.2d 203 (1977), the Supreme Court reversed the Second Circuit's reversal of Kibbe's conviction, ruling that the omission of a complete jury instruction on the issue of causation, without objection at trial, had not "'so infected the entire trial that the resulting conviction violated due process.'"

2. Other courts have inquired whether the allegedly intervening cause was "independent" or the "natural consequence" of the harm caused by the defendant. *People v. Meyers,* 392 Ill. 355, 357, 64 N.E.2d 531, 533 (1946) (death from collapse and fall not independent of illegal abortion because it was part of a natural sequence of an illegal operation) (as modified on denial of rehearing); *DeVaughn v. State,* 232 Md. 447, 454–55, 194 A.2d 109, 113 (1963) (exploratory laparotomy after gunshot wound not "independent supervening cause" of death), *cert. denied,* 376 U.S. 927, 84 S.Ct. 693, 11 L.Ed.2d 623 (1964). Still other courts have characterized an intervening cause simply as an event "so extraordinary that it would be unfair to hold the appellant responsible for the actual result." *Sims v. State,* 466 N.E.2d 24, 26 (Ind.1984) (surgery performed on victim of beating not intervening cause of death); *accord, Gibson v. State,* 515 N.E.2d 492, 496 (Ind.1987) (fatal staph infection resulting from surgery performed on victim of beating not intervening cause of death).

One authority uses a more precise approach distinguishing between intervening acts that are a "coincidence" and those that are a "response" to the defendant's acts:

> An intervening act is a coincidence when the defendant's act merely put the victim at a certain place at a certain time, and because the victim was so located it was possible for him to be acted upon by the intervening cause....
>
> By contrast, an intervening act may be said to be a *response* to the prior actions of the defendant when it involves reaction to the conditions created by the defendant.

1 W. LaFave & A. Scott Jr., *supra,* § 3.12, at 406. Employing this distinction, Professors LaFave and Scott propose that an intervening act properly characterized as a coincidence "will break the chain of legal cause unless it was foreseeable," whereas an intervening act that can be called "a response will do so only if it is abnormal (and, if abnormal, also unforeseeable)." *Id.* at 407. *See also State v. Hall,* 129 Ariz. 589, 594, 633 P.2d 398, 403 (1981) (en banc) (applying LaFave & Scott approach). Both appellant and the government, in their respective briefs, discuss causation using the "coincidence" and "response" terminology. We find it more appropriate to apply the test for proximate cause—foreseeability—used in *Baylor* and thus to leave for another day, if necessary, the addition of further refinements.

2d at 475 (hepatitis not unforeseeable cause of death when incidence of death after exposure to hepatitis was only .01% to 3%).

*AFFIRMED.*