Melvin DOE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–702, 88–670 and 89–78.

District of Columbia Court of Appeals.

Argued March 5, 1990.
Decided Dec. 7, 1990.

Lawrence M. Baskir, appointed by the court, for appellant.

Kirby D. Behre, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN, and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant Melvin Doe appeals his conviction for voluntary manslaughter while armed (D.C.Code §§ 22–2405, –3202 (1989 Repl.)) contending that the trial court erred in failing to instruct the jury, *sua sponte*, on causation, and that statements made in the prosecutor's closing argument to the effect that appellant was a "bad person" improperly prejudiced appellant. Appellant's direct appeal of his conviction has been consolidated with his appeals from the trial court's denials, without hearing, of his two post-trial motions under D.C.Code § 23–110 (1989 Repl.). Finding no merit in appellant's arguments, we affirm. Because appellant's counsel has raised questions with respect to the duties of counsel

appointed by this court for direct criminal appeals to investigate possible claims of ineffective assistance of trial counsel, we will discuss those duties in the course of addressing appellant's arguments. *See Shepard v. United States*, 533 A.2d 1278 (D.C.1987).

## I.

On September 18, 1982, appellant Melvin Doe stabbed Leroy McCray with a knife at 208 Morgan Street, N.W., where appellant had rented a room from McCray. The stabbing followed an earlier altercation between the two men that stemmed from McCray's having locked appellant out of the house and blocked appellant's girlfriend's exit from appellant's bedroom. After the girlfriend, Ms. Betty Jean Poteat, had shaken the bedroom door open, she let appellant in the front door of the house. After appellant entered the house, he confronted McCray in McCray's bedroom. McCray then became angry and hit appellant with a spear-like object that made a small cut on appellant's left side. As McCray continued to pursue appellant with the "spear," appellant stabbed McCray four times with a butcher knife he had been carrying in his pocket. McCray required emergency surgery. Two days later, McCray, an alcoholic who was experiencing delirium tremens, suffered a cardiac arrest, experienced severe brain damage, and then lapsed into a coma. McCray never regained consciousness and died on May 2, 1983.

## II.

Doe argues that the trial court improperly denied his *ex parte* motion for the appointment of counsel and for expert and investigative services.[1] Doe contends that these appointments were necessary in or-

der to prepare adequately for a motion to vacate judgment and order a new trial under D.C.Code § 23–110 based on trial counsel's having been ineffective in that he failed to pursue the "complete defense" of lack of proof of causation of McCray's death. Moreover, Doe argues, "appointed appellate counsel must be appointed at the trial level as counsel for proposed new trial proceedings...." The government responds by arguing that Doe's § 23–110 motion failed to demonstrate a sufficient basis for these appointments, and that the motion was properly denied without a hearing.

■■ The Constitution does not require the appointment of counsel to pursue post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). Similarly, there is no statutory basis for an unqualified right to such appointment. *Jenkins v. United States*, 548 A.2d 102, 104 (D.C.1988). *See* D.C.Code §§ 11–2601(3)(A) and 11–2602 (1989 Repl.). The decision whether to appoint counsel to pursue collateral relief is "entrusted to the sound discretion of the trial court." *Jenkins, supra*, at 105. The guiding standard is whether such an appointment is in the "interests of justice." *Id.*[2]

■■ In order to demonstrate a need for the appointment of counsel, a petitioner usually must satisfy the same criteria that would entitle the petitioner to a hearing on the § 23–110 motion under *Pettaway v. United States*, 390 A.2d 981, 984 (D.C. 1978). A prisoner is not entitled to a hearing on a § 23–110 motion if the motion:

(1) is " 'palpably incredible' (though not merely 'improbable')," or (2) "fails to state a claim," *i.e.*, the assertions, even if true, would not entitle the prisoner to relief under § 23–110, or (3) is " 'vague and conclusory,' " *i.e.*, the "prisoner does

---

**1.** Appellant's counsel filed the motion for new trial underlying appeal No. 89–78 in order to make it clear that the trial court had entered a final and appealable order on his November 30, 1987 motion for appointment of counsel and other relief. The motion for new trial raised no new grounds for relief, and therefore we treat as one these two appeals from denial of post-conviction relief.

**2.** The foregoing principles stated in *Jenkins* were set forth in the lead opinion by Judge Ferren; neither the concurring nor the dissenting judge addressed this issue or joined in this portion of Judge Ferren's opinion.

not present a factual foundation in some detail."

*Jenkins, supra,* at 105 (quoting *Pettaway, supra,* at 984). Considering the nature of these standards for hearings, it is not surprising that few cases will require the appointment of counsel when no § 23–110 hearing is required under *Pettaway.* When a hearing is required, however, the appointment of counsel by the trial court is obligatory. Even when the matters advanced by a movant do not appear to require a hearing, the trial court has the discretion to appoint counsel to aid movant in marshalling and presenting a request for relief.

It is implicit that the trial court rejected Doe's motion because the "assertions, even if true, would not entitle the prisoner to relief under § 23–110." *See Jenkins, supra,* at 105. The trial court noted that there was enough evidence on causation for the jury to determine that appellant caused McCray's death. In addition, the trial court deemed trial counsel's decision not to pursue a causation defense to be a tactical choice, a finding that would preclude Doe from obtaining relief under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Doe, we should note, argued that he had acted in self defense. Having stated grounds that evinced the strong likelihood that Doe's claims would not succeed even if counsel were appointed, the trial court found no reason for granting Doe's *ex parte* § 23–110 motion for the appointment of counsel and expert and investigative services.[3]

■ Doe's *ex parte* motion for the appointment of counsel and other services failed to state any specific grounds why expert or other investigative services would be necessary to delve further into the causation issue. As the trial court indicated, the cause of McCray's death was explored during trial. Doe's trial counsel

fully cross-examined the government's witnesses who testified on that issue.

Clyde Callender, M.D., testified at trial as an expert witness as follows:

The cause of [McCray's] death was related to—well, the cause of death [was] his heart stopped beating but basically all of this was related to the traumatic event that occurred in September of the stab wound of the chest and abdomen which caused him to require surgical intervention and then made him susceptible to delirium tremens which then caused him to have the cardio-respiratory arrest and which eventually resulted in his demise some eight months later.

Q. But for the stab wounds would any of these things happened?

A. No.

Doe's trial counsel cross-examined Dr. Callender about his testimony and the treatment McCray received while he was in the hospital, including the delirium tremens McCray suffered as a result of his surgery. Specifically, trial counsel asked whether the valium administered to McCray could have caused him to become unconscious. Appellant's trial counsel asked Dr. Callender to assign percentages to the effect of the valium and the delirium tremens on the cardiac arrest. The doctor responded, "it was my opinion that the delirium tremens was in my opinion was 70 percent likely to have caused the arrest, but there's a thirty percent likelihood that the val[i]um at least was contributor to it."

The doctor who performed the autopsy, Rak W. Kim, M.D., testified that the cause of death was "[b]ronchial pneumonia associated with bad bed sores. That is secondary to stab wounds." He also testified that the pneumonia and infection from the bed sores were complications of the stab wounds. Defense counsel also cross-examined Dr. Kim as to the cause of McCray's death and exposed a limitation of Dr. Kim's

**3.** The trial court gave the following reasons for denying the motion:

This Court has reviewed the trial transcript in this case. It is the Court's opinion that defendant's trial counsel provided effective and adequate representation. This Court views trial

counsel's election to advance another defense instead of causation as a tactical choice. Furthermore, the Court is satisfied that there was sufficient testimony on the issue of causation that a reasonable jury could conclude that defendant's actions caused the victim's death.

report, *i.e.*, that Dr. Kim did not have information about McCray's alcoholism when he completed the autopsy report and he based his findings on hospital and police reports. Defense counsel also brought out during his cross-examination information about whether another listed cause of death, "cerebral cortical necrosis," was related to delirium tremens, and elicited that the doctor considered it "secondary to diminished oxygen supply to the brain as to heart failing and unable to pump enough blood to the brain." Toward the end of the cross-examination, Dr. Kim concluded that he could not separate the causes from each other and that they should be grouped together as a complication of the critical injury.

In sum, the record refutes appellant's argument that Doe's trial counsel was ineffective in that he failed to press the defense that cause of death was not established. To the contrary, the record demonstrates that trial counsel cross-examined fully, but that despite his efforts the jury had ample evidence on cause of death to find that McCray died as a result of the stab wounds and secondary complications due to those wounds. Doe does not now assert the existence of any contrary evidence.

◼ Under the standards enunciated in *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064, and *Ellerbe v. United States,* 545 A.2d 1197, 1198–99 (D.C.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988), Doe's ineffective assistance of counsel claim fails. Doe cannot meet the "but for" test of *Strickland* because Doe has failed to demonstrate that the results of his trial would have been different had his trial counsel pursued the causation defense. So even though Doe's assertion that his trial counsel did not press a causation defense was true, Doe was not entitled to a hearing. It follows that the order denying the motion for the appointment of counsel and expert and investigative services should likewise be affirmed.

### III.

Appellant's counsel has raised the question whether our opinion in *Shepard* has

placed upon counsel first appointed on direct criminal appeal additional duties with respect to the possible ineffectiveness of trial counsel. We take this opportunity to explain the duties of appellate counsel in that regard. In *Shepard* we held:

> [I]f an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim.

533 A.2d at 1280.

◼ We observe first that *Shepard* does not address the question of whether the express or implied duties of counsel appointed for a direct appeal include giving advice or taking actions with respect to the filing of § 23–110 motions based on the ineffectiveness of trial counsel. Although *Shepard* did not deal expressly with the obligations of counsel, it placed upon the client, appellant on direct appeal, a duty to pursue recognizable avenues of § 23–110 relief for ineffectiveness of trial counsel, or face a procedural bar to later efforts to do so. We think it follows that an inherent part of counsel's responsibility on direct appeal is to consider whether the client's interests require the filing of a motion under § 23–110 based on ineffectiveness of counsel.

◼ In *Shepard* we identified a procedural bar to subsequent claims of ineffectiveness based on matters of which an appellant demonstrably knew or should have known. *Shepard, supra,* 533 A.2d at 1280. This does not translate, however, into a requirement that new counsel appointed on appeal investigate *de novo* everything that the trial counsel did, or could have done, as appellant's counsel posits. Instead, the duty of appellate counsel to investigate possible ineffective assistance of counsel claims is triggered by what the appellant (and trial counsel) tell appellate counsel in response to a reasonably thorough inquiry,

and by what is reasonably noticeable from the trial court's records. Accordingly, under *Shepard*, appointed counsel on direct appeal is obliged to make reasonable inquiry into the possibility of ineffective assistance of counsel at trial by researching and developing points thus uncovered that might give rise to a claim of ineffectiveness.

 If, after completing such an inquiry and any indicated research, appellate counsel concludes that there exists an adequate basis for advancing a claim of ineffective assistance of trial counsel, appellate counsel should advise appellant of the results of the inquiry. The next step would be the filing of a § 23–110 motion accompanied by a request by appellant to the Superior Court for it to appoint appellate counsel or other counsel as § 23–110 counsel. Should additional investigation be thought necessary, it could be sought at the same time. If appellant should request, appellate counsel could prepare and file the appropriate papers in appellant's behalf, and this might frequently prove the most suitable way to proceed.[4] Alternatively, appellate counsel could assist appellant in the preparation and filing of the motion. Appellate counsel's action regarding such collateral relief in the trial court will be shaped by the exigencies of each case.[5] We also observe that the fact of the pending direct appeal gives the appellant no greater right to authorization of investigative services or trial court appointment of counsel for the § 23–110 motion than the appellant otherwise would have had.

### IV.

 Turning to the merits of Doe's direct appeal, Doe argues that the trial court should have given a causation instruction, *sua sponte*, to the jury because causation was raised in the government's case. Doe seems to contend that because the issue of causation was central to the government's case and the government's evidence put causation in issue, the cause of McCray's death was an issue that the jury should have been directed to consider on the basis of a particularized instruction. The government argues that the instructions on the elements of second-degree murder and voluntary manslaughter included causation as an element, and notes that trial counsel posed no objection to the jury instructions as given, and asked for no additional instructions.

The government argues further that even had the trial court given the unrequested jury instruction (Criminal Jury Instructions for the District of Columbia, No. 4.27 (3d ed. 1978)) *sua sponte*, it would not have helped Doe because a preexisting weakness (McCray's alcoholism) of a victim or negligent medical care while being treated for injuries, will not absolve one who inflicts an injury that contributes to a person's death. Moreover, the government argues, the fact that McCray's delirium tremens caused him to lapse into a coma after having been given valium was a reasonably foreseeable consequence of the stabbing injuries.

When discussing the proposed jury instructions of the appellant Doe, the trial court noted the requested instructions included "the 500 series. He's asking for 5.13 which of course is a general self-defense and that's his theory here." Defense counsel did not disagree. Upon review of the trial transcript, it is clear that the defense neither requested any specific causation instruction nor raised causation as a defense in closing argument.[6]

The trial court instructed the jury on the elements of the charged offense of second-degree murder while armed (D.C.Code

---

4. If the trial court prefers to appoint an attorney other than appellate counsel to participate in the § 23–110 proceeding, it may, of course, do so.

5. Court appointed counsel who perform the services discussed here shall be entitled to compensation pursuant to D.C.Code §§ 11–2601–2604. The matter of how claims for such payments are to be processed administratively is beyond the scope of this opinion. *See* D.C.Code § 11–2604(d).

6. As discussed above, in view of the state of the record, the absence of a request for that instruction, and the omission of a causation argument, did not constitute ineffectiveness of counsel.

§§ 22–2403 –3202 (1989 Repl.)), as well as the lesser included offense of voluntary manslaughter. As to the element of causation to support the charge of second-degree murder, the trial court instructed the jury that "[t]o establish the first essential element of the offense, it is necessary that the defendant have inflicted an injury or injuries upon the deceased and that the deceased have died as a result of such injury or injuries." When instructing the jury as to the elements of voluntary manslaughter, the trial court stated that the government was required to prove beyond a reasonable doubt "that the defendant inflicted an injury or injuries upon the deceased from which the deceased died.... To establish the first essential element of the offense, it's necessary that the defendant have inflicted an injury or injuries upon the deceased and that the deceased have died as a result of such injury or injuries." The trial court also instructed on self-defense as Doe's trial counsel had requested (and argued in closing). Neither the government nor the defense noted any objection to the jury instructions. Upon the request of the jury, the judge reinstructed the jury on second-degree murder.

Doe cites two cases to support his argument that a special jury instruction should have been given to support a defense theory of causation. We consider them inapposite. Appellant cites *Fersner v. United States*, 482 A.2d 387 (D.C.1984), for the proposition that a defendant "is entitled to a requested instruction on the defense theory of the case 'if there is "any evidence fairly tending to bear upon the issue ∴.,"' however weak.'" *Id.* at 392 (quoting *Rhodes v. United States*, 354 A.2d 863, 864 (D.C.1976)). *Accord Stack v. United States*, 519 A.2d 147, 154 (D.C.1986). We observe first that *Fersner* did not address a situation like that before us where a defendant did not request certain jury instructions. In *Fersner*, moreover, where trial counsel had requested the desired instruction, this court rejected his argument on appeal because there was no evidence to support it. In *Stack*, the other case cited by appellant, this court reversed for failure to give, as requested, an instruction setting forth the defendant's theory of the case (independent cause of death in murder case).

In sum, we are confident that any additional and more specific instruction on causation would not have altered the jury's verdict, *see McKinnon v. United States*, 550 A.2d 915, 917–18 (D.C.1988). Accordingly, the failure of the trial court to give a special instruction on causation, *sua sponte*, was not plain error requiring reversal of Doe's conviction. *See Allen v. United States*, 495 A.2d 1145, 1154 (D.C.1985) (en banc).

## V.

Doe's final contention is that the prosecutor's reference to him as a "bad person" and other remarks in a similar vein during rebuttal argument denigrated Doe's credibility before the jury and substantially prejudiced his claim of self-defense. The government argues that, when viewed in context, the government's rebuttal argument essentially disputed the basis for Doe's self-defense theory and thus did not constitute prosecutorial misconduct requiring the reversal of Doe's conviction. Because Doe's trial counsel failed to object to these statements by the prosecutor, this court will review for plain error. *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc). We have recently noted: "The Supreme Court has cautioned that reversal for plain error in cases of alleged prosecutorial misconduct should be confined to 'particularly egregious' situations." *Dixon v. United States*, 565 A.2d 72, 75 (D.C.1989) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). Although the prosecutor's comments may have been in the "better left unsaid" category, we are persuaded that they did not inject plain error into the trial.

Accordingly, Doe's conviction for voluntary manslaughter while armed is affirmed. The trial court's rulings on Doe's post-conviction motions are also affirmed.

*So ordered.*

FERREN, Associate Judge, concurring:

I concur in the opinion for the court except for footnote 5, which declines to address a question squarely presented on appeal, as I see it. All members of this division agree that an attorney who conducts the inquiry under *Shepard v. United States*, 533 A.2d 1278 (D.C.1987), is entitled to compensation for that inquiry, as well as for preparing and filing a motion under D.C.Code § 23–110 (1989) (including a response to a government opposition). We should go on to explain how counsel gets paid. In my view, if the trial court appoints counsel to pursue the § 23–110 motion, counsel should file for compensation for the *Shepard* inquiry (and for later § 23–110 time) in that court. If, on the other hand, the trial court does not appoint counsel to pursue the matter further, counsel should file in this court for *Shepard* compensation. Finally, if the trial court denies the § 23–110 motion without a hearing and counsel concludes the court erred, I believe appellant is entitled to appointment of appellate counsel—compensated by this court—to pursue that matter in conjunction with the direct appeal. Counsel should have clear guidance here; we should not leave the impression—as footnote 5 does—that the court system is not yet clear about who will pay the vouchers under the various possible scenarios.