**David G. GARMON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 93–CF–98, 95–CO–1396.**

District of Columbia Court of Appeals.

Argued Sept. 5, 1996.

Decided Oct. 17, 1996.

---

Kenneth E. Sealls, Washington, DC, appointed by this court, for appellant.

Andrew C. Phelan, Assistant United States Attorney, Washington, DC, for appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, Patricia Stewart, and Andrew J. Kline, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, STEADMAN, and KING, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of four counts of armed rape and several related offenses. All four rapes occurred in the Capitol Hill area of the city, over a period of two months in the spring and early summer of 1991. Each victim was alone in her Capitol Hill apartment when she was raped at knifepoint[1] by an intruder and, in three of the four incidents, sodomized as well. After completing the sexual assault, the intruder also robbed each victim, taking money, jewelry, credit cards, and other items.

Appellant became a suspect when he was photographed by a bank camera at an automatic teller machine (ATM) as he tried to use the fourth victim's stolen ATM card. That photograph was circulated throughout the First District police station, and an officer who knew appellant identified him from the photo. A few days later, Officer Dwight Mitchell saw appellant walking down a street in Southeast Washington. Appellant ran when he saw the officer, but Mitchell pursued him and found him hiding in some bushes. When Officer Mitchell placed him under arrest, appellant was wearing a gold chain around his neck which was later identified as belonging to one of the rape victims.

At trial appellant presented an insanity defense. On direct appeal from his conviction, he contends that the trial court abused its discretion in allowing the government's expert witness, a psychiatrist, to sit in the courtroom while the defense expert, another psychiatrist, was testifying. He also appeals from an order denying a post-trial request for appointment of counsel and preparation of certain transcripts. We affirm both the judgment of conviction and the post-trial order.

I

To support his insanity defense, appellant presented the testimony of Dr. Fred Berlin, a psychiatrist, who had examined appellant before trial. Because Dr. Berlin did not prepare a written report of his findings, the court allowed a government psychiatrist, Dr. Raymond Patterson, who had also examined appellant, to remain in the courtroom while Dr. Berlin testified so that he could hear what Dr. Berlin had to say. Appellant objected to this ruling and now contends that it was reversible error.

On this point our recent decision in *Johnson v. District of Columbia,* 655 A.2d 316 (D.C.1995), is controlling. We held in *Johnson* that "[t]he exclusion of witnesses from the courtroom during trial is a matter within the discretion of the trial court." *Id.* at 317 (citations omitted). Moreover, in order to obtain reversal, appellant must show that he was prejudiced by the court's action. *Id.* at 318. On the record before us, we can

---

1. Two of the four rape victims testified that their assailant placed a knife at their respective throats, and a third said that the assailant laid a knife next to her head before he raped her. The fourth victim did not clearly see a knife, but she "caught a glimpse of what [she] thought was the point of a knife" at the base of her chin. She testified that the rapist said he had a knife and that he told her "that I could die fast or I could die slow, it was up to me."

discern neither an abuse of discretion nor any prejudice whatever. On the contrary, we think Dr. Patterson's presence in the courtroom was helpful because, as the government points out in its brief, it enabled him "to base his opinion on a more accurate understanding of Dr. Berlin's testimony." We find no basis for reversal in the court's decision to allow Dr. Patterson to remain in the courtroom.[2]

## II

One of the government's witnesses at trial was Ralph Franks, who met appellant while both were incarcerated at the District of Columbia Jail. He testified that appellant had told him in some detail about several sexual assaults which he had committed in the Capitol Hill area, and that he described how he intended to feign insanity in order to avoid punishment for those crimes. Franks himself had a lengthy criminal record. He was on parole at the time of trial and was also facing other charges, including negligent homicide and theft. On cross-examination, Franks denied having made any deal with the government in exchange for his testimony. Although he admitted that the possibility of such a deal "did occur to me," he testified that "as a good citizen" he had revealed what appellant had admitted to him (indeed, he had called the prosecutor in this case from jail and told her what appellant had said) because he "wouldn't want the person who told me [about the rapes] out near my nieces and my sisters and my mother."

The trial in this case took place in November 1992. Almost three years later, in September 1995, appellant's present counsel filed a motion for appointment of counsel "to explore, and file if appropriate, a motion alleging trial counsel's ineffective assistance...." He also requested permission to obtain the transcripts of certain pre-trial hearings in Franks' three cases, which he "strongly suspect[ed]" would show that Franks had "struck a deal with the government in exchange for his testimony," because at those hearings Franks' bond had been reduced "so that he was at liberty when he testified." These transcripts, he asserted, "should indicate, perhaps during [a] bench conference, what if any deal or other favorable consideration was afforded Mr. Franks." The court denied the motion without a hearing in a two-page order, from which appellant now appeals.

■ In *Jenkins v. United States*, 548 A.2d 102, 108 (D.C.1988), this court held that "denial of a request for counsel in connection with pursuit of a collateral attack on a conviction ... under [D.C.Code] § 23–110"[3] is not a final order, and hence not appealable. An appeal from the denial of such a request must therefore be dismissed for lack of jurisdiction. *Id.* at 109; *accord, Robinson v. United States*, 565 A.2d 964, 969 (D.C.1989). The rationale for this holding is that "complete, effective relief will be available" when a section 23–110 motion is denied on the merits, and an appeal is taken from that denial, *see Jenkins*, 548 A.2d at 108, whereas an interlocutory order denying the appointment of counsel to prepare a collateral attack is "inherently tentative." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir.1983) (citation omitted), cited in *Jenkins*, 548 A.2d at 107.

2. In *Johnson, supra,* 655 A.2d at 318, we cited several cases arising under Rule 615 of the Federal Rules of Evidence, which deals with the exclusion of witnesses from the courtroom. The government cites a number of others in its brief. All of these cases draw a distinction between fact witnesses and expert witnesses, and suggest that there is usually no need to exclude from the courtroom an expert witness who is not testifying to the facts, because the expert's testimony is not likely to be tainted or influenced by the testimony of the fact witnesses. *See, e.g., Morvant v. Construction Aggregates Corp.,* 570 F.2d 626, 629–630 (6th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978). In *Johnson* we did not formally adopt Rule 615, and thus we did not adopt the rule's requirements as to the kind of showing a party must make when asking that a witness be allowed to remain in the courtroom. Nevertheless, we agree with the Rule 615 cases cited in *Johnson* on the proposition that fact witnesses and expert witnesses may be treated differently.

3. A motion to vacate sentence under section 23–110 is the standard means of raising a claim of ineffective assistance of trial counsel. *See Shepard v. United States,* 533 A.2d 1278, 1280 (D.C. 1987) (citing cases). Although the motion filed by counsel did not cite section 23–110, it is clear from his brief on appeal that he had that statute in mind when he filed it.

Therefore, since appellant never actually filed a motion under section 23–110, the government argues that there is no final order for us to review.

We also said in *Jenkins,* however, that it would be "probably more sensible" to deem a request for counsel in such circumstances "sufficiently reflective of a request for § 23–110 relief as well—even if none is articulated at the time," so that "the question of appealability of a denial of counsel is not presented in isolation." *Id.* at 107. Thus it appears that the denial of a motion for appointment of counsel may be appealable if it can be construed as the denial of a request for relief under section 23–110. Appellant contends that that is what we have here: that the order denying his request for counsel functioned "in effect" as a rejection on the merits of his implied but unarticulated section 23–110 motion. Although the government's argument is sound as a general principle, we agree with appellant that in this instance the order before us may be read as he interprets it, because the trial court based its denial of the request for counsel on its own recollection of the trial and of Mr. Franks' role in it. The court said in its order:

> The Court remembers the trial well and has reviewed the witness' testimony. It is inconceivable that the information sought here by Defendant could have affected the outcome. The witness [Franks] was impeached with eleven convictions, numerous pending cases, including homicide, and significant backup time, and was thoroughly questioned regarding his expectations. More significantly, the case against Defendant was overwhelming in the extreme. Any additional impeachment of the witness along the lines suggested by the request could not possibly affect the outcome. The Court cannot, therefore, justify the expenditure of public funds sought in Defendant's motion.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that a defendant claiming ineffective assistance must establish, first, "that counsel's performance was deficient," and second, "that the deficient performance prejudiced the defense." *Id.* at 687,

104 S.Ct. at 2064. To demonstrate prejudice, the defendant must show

> a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. at 2068. Given the "strong presumption" that counsel's performance met constitutional standards, *id.* at 689, 104 S.Ct. at 2065, this court has held that "a movant must show ... that but for trial counsel's error there is a reasonable probability that the defendant would have been found not guilty." *Smith v. United States,* 608 A.2d 129, 131 n. 4 (D.C.1992).

■ In stating that any further impeachment of Franks beyond what the jury heard "could not possibly affect the outcome," the court apparently had in mind the second part of the *Strickland* test. Noting that Franks had been impeached with eleven prior convictions, and observing that the evidence against appellant, quite apart from Franks' testimony, was "overwhelming in the extreme," the court concluded in effect that even if appellant's trial counsel had somehow been deficient in failing to explore Franks' pre-trial release status, the defense would not have been prejudiced because appellant still would have been convicted. We find no error in this ruling. Given the strength of the government's case and the abundance of impeaching evidence that the jury actually heard, we see no reasonable likelihood that any additional impeachment of Franks, of the sort now sought by appellant, would have made any difference at all in the outcome of the trial. We therefore hold, as the trial court held by implication, that counsel's failure to find out about Franks' release status did not prejudice the defense, and that appellant's suggestion of ineffective assistance fails to meet the second part of the two-part *Strickland* test.

In *Doe v. United States,* 583 A.2d 670, 672 (D.C.1990), we held that "[i]n order to demonstrate a need for the appointment of counsel, a petitioner usually must satisfy the same criteria that would entitle the petitioner to a hearing on the § 23–110 motion under

*Pettaway v. United States,* 390 A.2d 981, 984 (D.C.1978)." *Pettaway* holds, in turn, that a hearing is not required if the assertions in the motion, "even if true, would not entitle the prisoner to relief under § 23–110 . . . ." *Jenkins,* 548 A.2d at 105 (citing *Pettaway* ). Since the assertions in appellant's motion for appointment of counsel, even if true, would not entitle him to relief because they fail to satisfy the prejudice prong of the *Strickland* test, it follows that the trial court committed no error in denying the motion.

### III

The judgment of conviction and the order denying appellant's post-trial motion for appointment of counsel are both

*Affirmed.*