**Frederick Douglas KYLE, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 96–CF–1925, 98–CO–638.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1999.
Decided Sept. 14, 2000.

---

Richard S. Stolker, Rockville, MD, appointed by this court, for appellant.

Rachel Adelman–Pierson, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Shanlon Wu, and Julie A. Grohovsky, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL, RUIZ, and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

On July 19, 1995, appellant Frederick Douglas Kyle was indicted on charges of first degree sexual abuse, see D.C.Code § 22–4102 (1996 Repl.), kidnaping, see § 22–2101, and threatening to injure a person, see § 22–2307 (1996). During the trial, after the government's opening statement and the complaining witness' direct testimony, appellant pled guilty to first degree sexual abuse and kidnaping, subject to enhancement papers which made him eligible for a sentence of life in prison without the possibility of parole.

Before sentencing, appellant filed a motion to withdraw his guilty plea. The trial court denied his motion and sentenced appellant on the sexual abuse charge to life in prison without possibility of parole, and, on the kidnaping charge, fifteen years to life imprisonment, the terms to run consecutively. Appellant filed a timely notice of appeal.

On January 7, 1998, appellant filed in the trial court an application to have appellate counsel appointed for the purpose of pursuing a collateral attack on his conviction, contending he was denied effective assistance of counsel. See D.C.Code § 23–110 (1996 Repl.). The trial court denied appellant's motion, and appellant filed a notice of appeal.[1]

On appeal, appellant argues that: (1) the trial court abused its discretion in denying appellant's motion to withdraw his plea of guilty because his plea was not

1. On July 14, 1998, this court issued an order consolidating appellant's appeals and requiring appellant to show cause why his interlocutory appeal from the order denying appoint-ment of counsel should not be dismissed as having been taken from a non-final order. The show cause order was discharged on August 11, 1998, after appellant filed a response.

knowing and voluntary and lacked a factual basis as required by Superior Court Criminal Rule 11(f) (2000); (2) the trial court erred in denying appellant's motion requesting appointment of counsel to collaterally attack his conviction, because as an incarcerated prisoner, appellant cannot investigate and file an effective motion without counsel's assistance, and, under the circumstances, the trial court's refusal to appoint counsel amounts to a final order; and (3) the trial court erred in enhancing appellant's sentence to remove the possibility of parole because the government did not establish that appellant had been convicted of sex offenses against at least two victims, as required by D.C.Code § 22–4120(a)(5). We affirm the judgment on direct appeal, and affirm the trial court's denial on the merits of the request for appointment of counsel.[2]

## I. Denial of Motion to Withdraw Guilty Plea

In order to succeed on a motion to withdraw a guilty plea, a defendant must establish one of two separate and independent grounds: either that there was a "fatal defect" in the plea colloquy (the procedure for which is established in Superior Court Criminal Rule 11), or that "justice demands withdrawal under the circumstances of [defendant's] case." *Pierce v. United States*, 705 A.2d 1086, 1089 (D.C. 1997), *cert. denied*, 525 U.S. 1087, 119 S.Ct. 838, 142 L.Ed.2d 693 (1999). Post-sentence attacks on guilty pleas are subject to the "manifest injustice" standard. *See* Super. Ct.Crim. R. 32(e) (2000);[3] *Morrison v. United States*, 579 A.2d 686, 689 (D.C. 1990) (citing cases). A motion to withdraw a guilty plea made before sentence is regarded more leniently and should be given favorable consideration "if for any reason the granting of the privilege seems fair and just." *Pierce*, 705 A.2d at 1092. Here, the motion to withdraw the plea was made before sentencing, so the "fair and just" standard applies.[4]

Appellant contends that his guilty plea was not knowing and voluntary, that the

---

**2.** Appellant also argues that the trial court erred in refusing to grant a continuance to permit defense counsel to prepare adequately for trial, and for appellant to consider a "combination" plea offer made by the government four days before the trial date. Although the government does not raise the point, we consider the issue waived by Kyle's guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process."); *Collins v. United States*, 664 A.2d 1241, 1242 (D.C.1995) (per curiam) ("guilty plea ordinarily waives all non-jurisdictional defects in the proceedings below"). In any event, appellant's claim that the trial court abused its discretion in denying his request for a continuance in June 1996, five days before the scheduled trial date, is without merit. A party seeking a continuance must make a showing that it is "reasonably necessary for a just determination of the cause," *O'Connor v. United States*, 399 A.2d 21, 28 (D.C.1979) (quoting *Brown v. United States*, 244 A.2d 487, 490 (D.C.1968)), including, at a minimum, some showing of prejudice in the absence of a continuance, *see Mack v. United States*, 637 A.2d 430, 432 n. 3 (D.C.1994). Appellant cannot make that minimum showing because he obtained a *de facto*

continuance of three months during which to consider the plea when the trial did not begin until September 30. There is no indication in the record that the additional three months were inadequate for counsel's trial preparation, or for consideration of any plea that may have been available to the appellant.

**3.** Rule 32(e) provides:

A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea. Super. Ct.Crim. R. 32(e).

**4.** Kyle requested to enter his plea after the trial had begun, following the complaining witness' detailed direct testimony about the rape, which she gave with great difficulty. The court permitted Kyle to address the complainant outside of the presence of the jury, recessed for an hour so the parties could discuss a plea agreement. When they returned to the courtroom, the plea colloquy ensued, and the plea was accepted.

Kyle, through his counsel, filed the motion to withdraw the guilty plea on November 14,

plea lacked a factual basis as required by Superior Court Criminal Rule 11(f), and, therefore, that the trial court abused its discretion in refusing to permit the plea to be withdrawn. We review appellant's "knowing and voluntary" claim and his "factual basis" claim under the fatal defect prong of *Pierce*. We also review his claims under the "fair and just" standard.

### A. "Knowing and voluntary" nature of plea

 Kyle argues that his plea was not knowing and voluntary because he was denied the effective assistance of counsel at a critical stage in the proceedings, when deciding whether or not to pursue an insanity defense. He asserts that at the time of the Rule 11 inquiry he had not considered an insanity defense and was not even aware that such a defense might be available to him because he had only eight minutes to discuss the matter with his attorney, and then returned to the courtroom and waived his right to an insanity defense.

Kyle did not assert ineffective assistance of counsel in his written motion to withdraw the guilty plea. See *supra* note 4. During the sentencing hearing, however, he alleged that his counsel had been unprepared to go to trial and had not advised him about the insanity defense.[5] There has not been a collateral proceeding to develop the facts concerning the assistance that Kyle received from counsel in considering an insanity defense.[6] Thus, we must look to the available trial record for support that the plea was not knowing and

1996, the day before his scheduled sentencing, and, in addition, requested that he be examined at St. Elizabeth's Hospital. In the motion, his only claim, which he did not make on appeal, was that he was incompetent to stand trial because he was unable properly to assist in his own defense due to the fact that he was intoxicated at the time of the rape and did not remember it. He further asserted that the government would not be prejudiced by the granting of his motion to withdraw the plea.

5. Kyle stated as follows:

I'd first like to state I haven't been counseled or defended. I didn't have the opportunity to know what the insanity plea represented at the time the court offered it to me during the trial. [Defense counsel] when he went to trial was forced to be my counsel, after letting this Court know that he was ill-prepared to represent me that following Monday. And I let it be known to the Court that I hadn't seen him three weeks prior to trial and we were three days prior to trial. He did not instruct me as to or advise me about the validity of entering a guilty plea.

. . . .

And so based upon [the complaining witness' testimony], I had a mental block and I—based upon that fact that she said I smelled of alcohol and sweat, I knew there was some truth that I had had some kind of dealings with her. And on that basis and that basis alone, I pulled [defense counsel's] sleeve and asked him to enter a plea that would be suitable for the event or the insan-

ity plea which we had discussed. And next my asking him that he le[t] it be known that he needed every moment that he had at his disposal to prepare for cross-examination. He didn't have the opportunity of a chance to come back in chambers behind the court to talk to me or advise me of anything. He came back and he offered me three pieces of paper. I was so dazed at the time, I was placing my trust in him that he would eventually speak up in court and represent me. So I signed the papers. I didn't read them. I don't know what they, you know, what they represented.

So next we—the marshal came back and got me, brought me back before the court. And it was at that time I believe, Your Honor, you offered or asked me if I understood the nature of the guilty plea. And that—I think you said 15 to life or something to that effect. But I was—Like I said, I was dazed and I let it be known that I did and you asked me if I wanted to enter the insanity plea and I asked you what was it at that time. And I believe you gave me a cursory understanding of what it was. But I have never been abreasted (sic), counseled by my counsel about the insanity plea or what all it entailed.

6. Appellant filed an Application to Appoint Counsel Pursuant to the Criminal Justice Act requesting counsel be appointed to file a § 23–110 motion claiming that Kyle was denied the effective assistance of counsel. The trial court's denial of his application for appointment of counsel is discussed below.

voluntary because Kyle was not advised concerning an insanity defense. In so doing, we see no reason to doubt the voluntariness of his guilty plea.

Kyle initiated the plea negotiations after being moved by the complaining witness' testimony, and his lawyer confirmed his intentions by asking him about it three times. In addition, Kyle gave a reason for wanting to make a plea at that time, *i.e.,* that he did not want to put the complaining witness through any more humiliation. The transcript does not show that the court limited the time Kyle had to talk with his lawyer about the insanity defense. Following a recess, Kyle told the court that he had had sufficient opportunity to discuss the insanity defense with his lawyer, and that he did not intend to pursue it. He again gave lucid and cogent reasons for his decision, saying, "I don't want to put her through that.... I know she's not lying. I know she's telling the truth.... I have no intention of playing no games, legally or otherwise, to ... pursu[e] any pretense of insanity or anything else." Subsequently, in his oral statement to the court prior to sentencing, Kyle said that he had not had sufficient opportunity to discuss the insanity defense with his

lawyer. See *supra* note 5. The trial court credited Kyle's statements during the plea colloquy and did not believe his statements during the sentencing hearing.[7] We will not disturb such a finding on appeal. *See (Kevin) Williams v. United States,* 595 A.2d 1003, 1006 (D.C.1991) ("Assessing the credibility of witnesses is uniquely a trial court's function, and we will reverse only if we find those assessments plainly wrong or lacking evidentiary support."). Therefore, the record supports that Kyle's plea was knowing and voluntary.

## B. Factual basis for plea

■ Appellant next argues that his plea was tainted because it lacked a factual basis. Superior Court Criminal Rule 11(f) requires that the trial court find that there is a factual basis for the plea before accepting it. The trial court must determine that the conduct which the defendant admits constitutes the offense charged and that the government has evidence from which a reasonable juror could conclude that the defendant was guilty as charged. *See United States v. Abreu,* 296 U.S.App. D.C. 16, 19, 964 F.2d 16, 19 (1992) (per curiam);[8] *see also Morton v. United*

---

**7.** The court made a finding during the sentencing hearing that Kyle's second statement was motivated by the wish to further delay the proceedings rather than any misunderstanding of his situation:

Now, the defendant and his counsel request that he be permitted to withdraw his guilty plea on the grounds that he would now like to raise—or at least seek to pursue the potential of raising an insanity defense. And at the time we were going through the plea colloquy, I specifically asked Mr. Kyle in reference to his desire to raise such a defense and gave him an opportunity to talk to his lawyer. He indicated he had had adequate opportunity to confer with his lawyer. And having done that, indicated that he desired not to raise the insanity defense.

I fully explained to him all the ramifications of doing that and not doing that. And with full knowledge of everything related to that defense and not raising it and raising it, Mr. Kyle clearly indicated his desire to go forward and plead guilty under the guise

that he wanted to avoid the victim being further traumatized by this event.

Thereafter, however, Mr. Kyle makes degrading statements about the young lady, saying that this was all just something that went bad because she had agreed to have sexual intercourse with him for a fee and that because he did not have the money that she wanted, that she then cried rape. And then also in reference to the presentence report, had the audacity to call the young lady a skeezer. And I think all of that is just reflective of a manipulative person who is seeking to try and find some way to wiggle out of being held responsible for the conduct that he engaged in.

So it's my view, based upon all of the circumstances, that there is no basis whatsoever for withdrawing the guilty plea, that it's just another ploy in order to prolong these proceedings.

**8.** We draw from federal case law to interpret Rule 11, which is substantially similar to Fed. R.Crim.P. 11. *See Gooding v. United States,*

*States*, 620 A.2d 1338, 1340 & n. 3 (D.C. 1993).

■ Appellant explains that even though the government presented its evidence on the record, he was not directly asked whether, nor did he state explicitly that, he had actually participated in the conduct for which he was charged. During the plea colloquy, appellant stated that he knew the complaining witness was not lying and that he agreed with her testimony. Appellant argues that what he meant when he made those statements during the plea colloquy was that he did not question the complainant's sincerity, rather than that he specifically agreed that he had committed the offense she described.

Here, there was no defect in establishing the factual basis for appellant's plea. In appellant's presence, the government laid out the substance of the charges against him, including testimony of the complaining witness. Her testimony, alone, would be sufficient to convict and thus provided a factual basis for Kyle's plea.[9] In addition, Kyle specifically agreed with the complaining witness' version of the facts.[10] Several times he admitted to having been in the park with the complainant on the evening she was sexually assaulted, and requested to apologize

to the complainant, implying he committed the crime. *See McClurkin v. United States*, 472 A.2d 1348, 1356 (D.C.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984) (holding that appellant's guilty plea was intelligent and voluntary where "the plea proceeding as a whole was conducted in such a manner as to inform appellant adequately of the nature of the charge to which he was pleading," and because appellant "made admissions that necessarily implied he had committed" the charged offense).

■ Appellant has never asserted that he is innocent or denied that he committed the specific acts with which he is charged, only that he cannot remember them because he had been drinking. Voluntary intoxication, however, is not a defense to a general intent crime such as first degree sexual abuse. *See Parker v. United States*, 123 U.S.App. D.C. 343, 345–347 & n. 5, 359 F.2d 1009, 1011–1013 & n. 5 (1966) (intoxication not a defense to a general intent crime; it is material only to negate specific intent); *see also United States v. Thornton*, 162 U.S.App. D.C. 207, 211, 498 F.2d 749, 753 (1974) ("[R]ape requires no intent other than that indicated by the commission of the acts constituting the offense."); *McGuinn v. United States*, 89 U.S.App. D.C. 197, 199, 191 F.2d 477,

529 A.2d 301, 305 n. 6 (1987) (per curiam) (en banc).

9. Although the complaining witness testified at length, the following statements of the complaining witness capture the essence of the charges of kidnaping and first degree sexual abuse to which Kyle plead guilty:

> I offered him money I had in my bag. And he said he didn't want that. So he dragged me to—to the area where the little—where the trees were covered up—covered over.... [When he first put his arm around my neck] I was on the safe side of the road.... He put his arm around me like my neck like that and then he put the sharp object to my neck.
> He started to penetrate me in my butt....
> He penetrated me in my vagina.... He inserted his—his penis in my vagina .... he told me to cover my mouth.... I was on my stomach, on the ground .... he came

out and he made me—he made me put [his penis] back in.

10. During the plea colloquy the following dialogue occurred:

> THE COURT: So you did have the opportunity to hear the government's opening statement in which they allege what they would be able to prove?
> THE DEFENDANT: Yes, sir.
> THE COURT: And you also heard the complaining witness testify under oath about what you're supposed to have done?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you agree with what the government has said in their opening statement and what the victim said by way of her testimony as to what you did?
> THE DEFENDANT: I agree with what the victim said, yes.
> THE COURT: What the victim said.
> THE DEFENDANT: Yes.

479 (1951) ("[R]ape is not a crime which requires a specific intent."). Although intoxication might be a defense to the kidnaping charge, *see Davis v. United States,* 613 A.2d 906, 912 (D.C.1992) (kidnaping is a specific intent crime); *Washington v. United States,* 689 A.2d 568, 573 (D.C. 1997) (voluntary intoxication may negate specific intent), appellant was instructed during the plea colloquy that specific intent was required for a conviction of kidnaping.

In sum, the record reveals that even though appellant said he could not remember what occurred, he initiated the discussion of a potential plea after his recollection was refreshed by the complainant's testimony. He specifically rejected the government's version of events, affirming the complainant's version instead. See *supra* note 10. The complainant's testimony of what occurred, to which appellant admitted, described a course of conduct that constituted first degree sexual abuse and kidnaping, establishing the factual basis for the plea.

### C. "Fair and just" prong

■ Where a defendant moves to withdraw a plea under the second prong of the *Pierce* test prior to sentencing, withdrawal may be permitted if, for any reason, the granting of the motion seems "fair and just." *Pierce,* 705 A.2d at 1092. Three factors are particularly relevant in considering a pre-sentence motion to withdraw a guilty plea: (1) whether the defendant has asserted his legal innocence; (2) the length of delay between the entry of the plea and the motion to withdraw it; and (3) whether the defendant had the full

benefit of competent counsel at all times. *See id.* An assertion of legal innocence is a necessary prerequisite, but is not sufficient alone to require a plea withdrawal. *See id.* at 1092–93. In considering the length of the delay, the court should consider whether the government would have been prejudiced by withdrawal of the plea at the time of the motion to withdraw. *See id.* at 1093.

■ We have already noted that appellant does not assert his legal innocence. He also does not assert his factual innocence. At best appellant's argument seems to be that because of his intoxicated state, he has no independent recollection whether he committed the crimes to which he pled guilty. As discussed earlier, however, the record indicates that, at the time he entered his plea, appellant agreed with the complaining witness' version of events. See *supra* note 10.

We must also consider whether the government would have been prejudiced by withdrawal of the plea at the time the motion was made. The length of delay between the entry of the plea and the motion to withdraw is not disputed—there were five days between those events. Even though appellant did not delay in moving to withdraw his plea, it was the timing of the plea that prejudiced the government. In this case, the plea came in the middle of trial, after the complaining witness had testified in what was acknowledged by appellant to be a traumatic experience for her. Withdrawal of the plea would imply a new trial, requiring the complaining witness to testify a second time.[11]

11. The trial court stated:
 I think there comes a point in the judicial process when the Court, regardless of whether someone has pled guilty or not, and I understand the reality of the need for guilty pleas in order to move the process along and that people should be, in appropriate circumstances, given credit for having pled guilty, but in this case it was only a plea of guilty after an agonizing process of getting this case to trial and after the com-

plaining witness was subjected to the humiliation again of having to appear before 14 strangers and a courtroom full of people to tell them, tell the entire world what had happened to her. It was only at that point that Mr. Kyle, seeing the handwriting on the wall, saw fit to enter a plea of guilty. And I think the events that have occurred after the plea of guilty reflect that it wasn't true remorse that caused him to do so, that it's consistent with the process of manipu-

The remaining factor we usually consider is appellant's claim of ineffective assistance of counsel, which we have already rejected.[12] Under the circumstances, we conclude that the trial court did not abuse its discretion in determining that justice does not demand that appellant be permitted to withdraw his plea in this case.[13]

## II. Denial of Application to Appoint Counsel Pursuant to the Criminal Justice Act

 A trial court's determination whether to appoint counsel to assist an indigent prisoner in pursuing a collateral attack under D.C.Code § 23–110 is reviewed for abuse of discretion. *See Jenkins v. United States*, 548 A.2d 102, 104–05 (D.C.1988); *Doe v. United States*, 583 A.2d 670, 672 (D.C.1990). The prisoner has the burden to proffer grounds for collateral

relief at the time counsel is requested. *See Jenkins*, 548 A.2d at 106. To prevail on the application, appellant is required to satisfy the same criteria that would entitle him to a hearing on the § 23–110 motion. *See Doe*, 583 A.2d at 672.[14] When a hearing is required, appointment of counsel is obligatory. *See id.* at 673. The pendency of a direct appeal does not give appellant any greater right to appointment of counsel for a § 23–110 motion than he would otherwise have. *See id.* at 675. If the trial court denies the motion for appointment of counsel, appellant must obtain a final ruling on the merits of the collateral attack on his conviction before he may appeal an order denying appointment of counsel to assist in that effort; an appeal from denial of the motion for appointment of counsel will normally be denied for lack

lation that has occurred throughout the entire course of this trial that caused him to see that is the easy way out at the time and not really an attempt to spare the victim further pain. Because if I were to have granted the request that he made to withdraw his guilty plea, then obviously she would have had to endure that humiliation and pain again during the course of another trial.

So I think Mr. Kyle's conduct after the plea belies his suggestion that he made at the time of the plea that he was remorseful and did not want to further hurt the victim.

12. On appeal, Kyle does not contend that his due process rights were violated by denial of the motion to withdraw his plea because he was unable to assist his counsel, nor did he do so before the trial court. See *supra* note 4. Cf. *Wilson v. United States*, 129 U.S.App. D.C. 107, 110, 391 F.2d 460, 463 (1968) (where amnesia prevented appellant from recollecting alleged crime, remanding to determine whether appellant had sufficient present ability to consult with his counsel with reasonable degree of rational understanding and whether he had a rational as well as factual understanding of proceedings against him to ensure a fair trial and effective assistance of counsel).

13. We take note of the results of the competency screening examination of August 31, 1995, in which Dr. Kenel described appellant as follows:

Mr. Kyle has a highly accurate and detailed knowledge of the judicial process and the roles of various court officials as he has

availed himself of law library facilities in the various institutions to which he was assigned. Mr. Kyle was aware of the charges against him and their gravity, his plea options, rights and the concept of plea bargaining. In addition, Mr. Kyle was aware of the necessity and importance of cooperating with his lawyer and of behaving appropriately in the courtroom.

14. This court has held that "a § 23–110 motion may properly be denied without a hearing where the defendant's allegations (1) are vague or conclusory, (2) are palpably incredible, or (3) would not merit relief even if true." *(Bradford) Williams v. United States*, 725 A.2d 455, 459 (1999) (quoting *Ready v. United States*, 620 A.2d 233, 234 (D.C.1993)). In the case at bar, the allegations made by appellant in the motion to appoint counsel were devoid of facts on which to base a claim of ineffective assistance of counsel. In his order denying the Application to Appoint Counsel, the trial judge stated that appellant

fails to articulate how his trial attorney was allegedly ineffective, and if in fact his counsel's performance was deficient, how he was prejudiced by counsel's representation.... The record as the court knows it, and especially in the absence of anything to the contrary presented by [defense counsel], convinces the court that a "colorable" claim that would entitle the defendant to relief does not exist.

of jurisdiction. *See Garmon v. United States*, 684 A.2d 327, 329 (D.C.1996); *Jenkins*, 548 A.2d at 108. Here, appellant filed a notice of appeal from the trial court's denial of his motion for appointment of counsel before pursuing the motion to completion. The government argues, therefore, that there is no final order for us to review and that the appeal from the trial court's denial of the request for appointment of counsel should be dismissed.

In *Garmon*, we noted an exception to this rule where the denial of a motion for appointment of counsel can be construed as a denial on the merits for relief under § 23–110. *See* 684 A.2d at 330. Here, the trial court's ruling was based on factors beyond the presentation in the motion for appointment of counsel, and was decided on the basis of "[t]he record as the court knows it." In so doing, the court found that a " 'colorable' claim that would entitle the defendant to relief does not exist." We construe that ruling as a denial of a substantive motion for relief under § 23–110, consider the appeal under the *Garmon* exception, and affirm the trial court's decision.

■ We note, in particular, that the court knew the record well. The same trial judge who denied appellant's motion for the appointment of counsel had presided over the aborted trial, the plea colloquy, and the sentencing. The trial judge had heard Kyle speak during the Rule 11 proceeding, at which time Kyle responded affirmatively to the court's questions as to whether he had had sufficient opportunity to confer with counsel and whether he understood the nature of the insanity defense. The trial judge also heard Kyle's contradictory statement at sentencing when he claimed that he had not had sufficient time to confer with counsel and that he had not adequately understood the nature of the insanity defense. See *supra* note 5.

Faced with appellant's contradictory statements, made in open court, the trial judge made a credibility determination, deciding to credit appellant's statement during the plea colloquy rather than that made at sentencing. See *supra* note 8. Based on the trial court's crediting of Kyle's statement made during the plea colloquy that he had a sufficient opportunity to consult counsel and did not wish to raise an insanity defense, we affirm the trial court's denial of Kyle's motion to set aside the conviction due to ineffective assistance of trial counsel in entering a plea of guilty.

■ We also address a concern expressed at oral argument by appellant's counsel about the procedure counsel appointed by this court must follow in pursuing a § 23–110 claim when the trial court has denied a motion for the appointment of counsel which appellate counsel believes is necessary to prepare adequately for the motion to vacate judgment under § 23–110. In *Doe* we carefully explained the level of inquiry required of appellate counsel in such a case, and the proper procedural steps to be taken. *See* 583 A.2d at 674–75. It is "an inherent part of counsel's responsibility on direct appeal" to consider the appropriateness of a § 23–110 motion. *Id.* at 674. The duty "is triggered by what appellant (and trial counsel) tell appellate counsel in response to a reasonably thorough inquiry, and by what is reasonably noticeable from the trial court's records." *Id.* at 674–75. Appellant's counsel need not have completed a searching and exhaustive inquiry, but only a "reasonable inquiry into the possibility of ineffective assistance of counsel at trial by researching and developing points thus uncovered that might give rise to a claim of ineffectiveness." *Id.* at 675. *Doe* addresses Kyle's counsel's situation specifically:

> If, after completing such an inquiry and any indicated research, appellate counsel concludes that there exists an adequate basis for advancing a claim of ineffective assistance of trial counsel, appellate counsel should advise appellant of the

results of the inquiry. The next step would be the filing of a § 23–110 motion accompanied by a request by appellant to the Superior Court for it to appoint appellate counsel or other counsel as § 23–110 counsel. Should additional investigation be thought necessary, it could be sought at the same time. If appellant should request, appellate counsel could prepare and file the appropriate papers in appellant's behalf, and this might frequently prove the most suitable way to proceed.

*Id.* at 675. To the extent that appellant's counsel was concerned about incurring fees and expenses, his efforts at making a "reasonable inquiry" and filing a motion for appointment of counsel are eligible for reimbursement by the appellate court as a part of his appellate duties, even if he were unsuccessful in obtaining an appointment from the trial court. *See id.* at 675 n. 5 ("Court appointed counsel who perform the services discussed here shall be entitled to compensation pursuant to D.C.Code §§ 11–2601[to] –2604."). If appellant had successfully established his entitlement to a hearing, the trial court would have granted the motion to appoint counsel and he could have been reimbursed by that court.

### III. Enhancement of appellant's sentence

■ Appellant argues that because the government did not establish that appellant had been convicted of sex offenses against at least two victims, the trial court erred in enhancing his sentence to remove the possibility of parole under D.C.Code § 22–4120(a)(5). Appellant acknowledges that he was convicted of two federal offenses—transportation in interstate commerce to commit rape and kidnaping—and two rape offenses in the Commonwealth of Virginia. He argues, however, that the federal offenses, interstate transportation and kidnaping, are not "sex offenses" within the meaning of the enhancement statute, and that there was no finding on the record that the two rape convictions in

Virginia involved two different women, which he claims is a requirement of the language in the District of Columbia Code that the prior offenses be committed "against 2 or more victims." *See* D.C.Code § 22–4120(a)(5).

Appellant's argument is frivolous. The record could not be more clear that appellant was convicted of two rape offenses against two different women in Virginia. There is no requirement, as appellant argues in his Memorandum in Aid of Sentencing and on appeal, that the convictions be less than ten years old. *See* D.C.Code § 22–4120.

For the reasons stated above, we affirm appellant's conviction and the trial court's denial on the merits of his application to appoint counsel pursuant to the Criminal Justice Act.

*Affirmed.*