*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 13-CT-128

CYNTHIA SANCHEZ, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CTF-9146-12)

(Hon. Heidi M. Pasichow, Trial Judge)

(Argued September 30, 2014                    November 6, 2014)

*Grey Gardner* for appellant.

*John J. Woykovsky*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEWMAN, *Senior Judge*.

NEWMAN, *Senior Judge*:   In this appeal, we are confronted with the contention that a trial judge abused her discretion in *sua sponte* invoking the "rule on witnesses" to exclude an expert witness called by the defense from hearing a portion of the testimony of the principal fact and expert witness called by the

government. We find an "erroneous exercise of discretion," and the prejudice required to constitute an "abuse" thereof.[1] Thus, we reverse.

In a bench trial, Sanchez was tried for driving under the influence, D.C. Code § 50-2201.05 (b)(1) (2009). The government's chief witness, Carll, a uniformed member of the U.S. Capitol Police, testified both as a fact witness and as an expert. On direct examination, he testified to the events leading to his stopping the vehicle that Sanchez was driving and that caused him to order her out of the vehicle. He testified that he administered three sobriety tests: the horizontal gaze nystagmus (HGN); the walk and turn; and the one-leg stand.[2] He described

---

[1] *(James W.) Johnson v. United States*, 398 A.2d 354, 365-66 & n.9 (D.C. 1979).

[2] In *Pennsylvania v. Muniz*, 496 U.S. 582, 585 n.1 (1990), the Supreme Court explained:

> The "horizontal gaze nystagmus" test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated "the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, pp. 8A-43, 8A-45 (1989). The "walk and turn" test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back

(continued…)

Sanchez's performances on these tests, which, coupled with the odor of alcohol on her breath, led him to conclude that she was operating her vehicle while under the influence. He arrested her. At the police station, Sanchez was advised by the officer who had transported her, Fleming, of the Implied Consent Act. She declined to be tested. The form reflecting her so declining was admitted into evidence.

After Carll testified on direct examination, counsel for Sanchez commenced cross-examination concerning his methodology in administering the field sobriety tests. He was soon interrupted when the trial judge summoned both counsel to the bench and stated:

> At this point, I don't think that your expert should be in the courtroom. He's heard the direct examination, and I don't really think it's appropriate for him to hear the cross, so I'm going to ask him to wait outside, because -- if the Government had objected to him hearing the direct, I might have considered excluding him, because it seems to me that the questions that you ask him must be based on the documents provided, could be based upon any CV that was provided or any discovery that was provided.

(…continued)
> heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine. The "one leg stand" test requires the subject to stand on one leg with the other leg extended in the air for 30 seconds, while counting aloud from 1 to 30.

> At this point, I don't see that it's appropriate for him to be in here for your cross examination.

Counsel informed the court that he intended to have Carll demonstrate in as accurate and minute detail as possible exactly how he administered the three tests; that direct examination had not done so; that there was no video recordation of the testing; and that the defense expert, Palacios, needed to see Carll's demonstrations and further testimony in order to opine thereafter whether the tests had been performed in the proper manner. Counsel further attempted to inform the court of his need for the presence of the defense expert to assist him in formulating further cross-examination based on Carll's answers. This trial judge cut off the attempt to proffer and ruled:

> I don't think he should be here to hear the witness's answers to your cross. You can ask him on direct. I think it gives you a completely unfair tactical advantage to have him sitting here on cross-examination when you can ask him questions on direct and the Government would get to cross him and determine what his answers will be.

Counsel's subsequent attempts to have the trial judge reconsider this ruling were equally futile. As she informed counsel, "you're just going to have to make do with those circumstances the best way you can."

Palacios testified. He described the proper methodology for administering each of the tests. He opined that there were a number of defects with Carll's methodology. He further opined that based on the other testimony in the government's case—including the testimony of Fleming (the transport officer) that he observed no signs of impairment during the twenty or so minutes he interacted with Sanchez—Carll "misinterpreted or mis-scored" the vertical nystagmus portion of the HGN test. He stated he could not be one hundred percent sure because of "not being able to see the officer administer the test." However, if the tests are not administered properly "the validity of the test is compromised."

The defense presented a number of fact witnesses, including Sanchez, all of whose testimony was exculpatory. In addition, the defense called a second expert witness, Lappas, a forensic toxicologist who testified on a "common" and "accepted methodology" of retrograde extrapolation, which he described as a "method of estimating what a blood alcohol level concentration in blood was at some time prior to the time the analysis was conducted." Given a hypothetical fact pattern tracking the defense evidence, he opined that the blood alcohol level of such a person at the time of Sanchez's arrest would have been between 0 and 0.04.

As early as 1943, we held that a trial judge has discretion to exclude non-party witnesses from hearing testimony at trial before testifying themselves, *Bedrosian v. Wong Kok Chung*, 33 A.2d 811, 812 (D.C. 1943)—the so-called "rule on witnesses." We have reaffirmed this ruling repeatedly. *See, e.g.*, *Garmon v. United States*, 684 A.2d 327, 328-29 (D.C. 1996); *(James) Johnson v. District of Columbia*, 655 A.2d 316, 317-18 (D.C. 1995) (per curiam); *Matthews v. United States*, 267 A.2d 826, 829 (D.C. 1970). We will reverse that decision only upon a showing of an "abuse of discretion." *Garmon*, 684 A.2d at 328-29. *See generally (James W.) Johnson*, *supra*, 398 A.2d at 365-66 (delineating our abuse of discretion analysis).

We have also distinguished the testimony of "expert" witnesses and "fact" witnesses. *(James) Johnson*, *supra*, 655 A.2d at 318-19; *compare* Fed. R. Evid. 615 (articulating the "rule on witnesses"), *with* Fed. R. Evid. 703 (1972) ("The facts or data in a particular case upon which an expert bases and opinion . . . may be those perceived by . . . the expert at or before the hearing."). Our cases are in accord with this portion of Rule 703. *See, e.g.*, *In re Amey*, 40 A.3d 902, 910 (D.C. 2012) (relying on this portion of the rule); *In re M.L.*, 28 A.3d 520, 530 n.21 (D.C. 2011) (same). What we said in *(James) Johnson*, *supra*, about excluding expert witnesses bears repeating at length:

Nevertheless, while we find no abuse of discretion here, it is worth pointing out that in applying Rule 615 of the FEDERAL RULES OF EVIDENCE (discussing the exclusion of witnesses), federal courts have relied upon a well-established distinction between factual witnesses and expert witnesses: "We perceive little, if any, reason for sequestering a witness who is to testify in an expert capacity only and not to the facts of the case. . . . [T]he presence in the courtroom of an expert witness who does not testify to the facts . . . hardly seems suspect and will in most cases be beneficial, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves before the jury." *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 629-30 (6th Cir.), *cert. dismissed*, 439 U.S. 801 (1978); *Polythane Systems v. Marina Ventures Int'l*, 993 F.2d 1201, 1209-10 (5th Cir. 1993), *cert. denied*, [510] U.S. [1116] (1994) (quoting *Morvant*, *supra*, 570 F.2d at 629-30; *United States v. Lussier*, 929 F.2d 25, 30 (1st Cir. 1991) (citing *Morvant*, *supra*, 570 F.2d at 629-30); *United States v. Burgess*, 691 F.2d 1146, 1157 (4th Cir. 1982) (same); *see also Malek* [*v. Fed. Ins. Co.*], 994 F.2d [49,] 54 [(2d Cir. 1993)] (the expert, whose assistance was important to plaintiff's case, was "not a 'fact witness whose recollection might have been colored' by the testimony of other witnesses" and should have been allowed to remain in the courtroom) (citation omitted). Furthermore, under Rule 615, a party is entitled to show that his expert is "essential to the presentation of the party's cause" and therefore should not be excluded from the courtroom: "[W]here a fair showing has been made that the expert witness is in fact required for the management of the case, . . . we believe that the trial court is bound to accept any reasonable, substantiated representation to this effect by counsel." *Malek*, *supra*, 994 F.2d at 53-54 (discussing the Rule 615(3) exemption to witness exclusion and quoting *Morvant*, *supra*, 570 F.2d at 630).

> In the future, therefore, it would seem prudent for the trial court to consider the appropriate distinctions between factual witnesses and expert witnesses in deciding whether to exclude witnesses from the courtroom. In particular, the trial court should allow parties the opportunity to show any potential prejudice they may endure by the exclusion of their expert—i.e., why the expert's presence in the courtroom is "essential to the presentation of the party's cause."

655 A.2d at 318-19 (alterations in original) (footnotes omitted) (parallel citations omitted).

We reiterated this in *Garmon*, *supra*, 684 A.2d at 328-29 & n.2. We repeat it yet again here.

Here, the trial judge's reasons for excluding the defense expert are at odds with the rationale of permitting an expert to base an opinion on "facts made known to the expert at . . . the hearing." Fed. R. Evid. 703 (1972). This is particularly so in cases, including this case, in which the trial was a bench trial. *See McKenzie v. United States*, 659 A.2d 838, 841 (D.C. 1995) (presuming that, in a bench trial, the trial judge does not make improper use of evidence); *(Melvyn A.) Johnson v. United States*, 636 A.2d 978, 981 (D.C. 1994) ("[A] trial judge is presumed to know of the proper use of evidence."). The proper exercise of discretion requires

that a valid reason be given or be discernable from the record. *(James W.) Johnson*, *supra*, 398 A.2d at 367. The Federal Rules of Evidence and our prior decisions have established that the presence in the courtroom of expert witnesses is the norm, subject to exceptions. Here, the trial judge articulated no valid basis for the exclusion and none is discernable from the record. Considering the record before us, we have no hesitation in ruling that there was an erroneous exercise of discretion.

In determining whether the erroneous exercise of discretion mandates reversal, and thus constitutes an abuse of discretion, we are mindful of the right of the defendant to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *accord Taylor v. Illinois*, 484 U.S. 400 (1988) (affirming the defendant's right to present witnesses in his defense). This right includes the right to confront witnesses and the right to introduce expert testimony. *See, e.g.*, *Benn v. United States*, 978 A.2d 1257, 1269-70 (D.C. 2009); *Robinson v. United States*, 50 A.3d 508, 523 (D.C. 2012). The right to present expert witnesses perforce includes the need to afford the expert appropriate means of gathering the "facts and data" upon which to base an opinion. In furtherance thereof, the defendant has a right to have his attorney consult with the expert during cross-examination of the government's expert so as to enable defense counsel to conduct meaningful cross-examination.

While these rights, as with others, are subject to reasonable judicial limitations, those limitations must be imposed with the nature of the right in mind.

Here, the defense sought to have the expert, Palacios, observe Carll demonstrate in detail how he performed the three sobriety tests to provide Palacios the "facts and data" as foundation for his expert opinion on whether the tests were properly administered. Deprived of this opportunity by the trial court's ruling, the defendant had to rely on the ability of counsel to give a second hand description of the demonstration that Carll gave on cross-examination. The unsatisfactory nature of this as a substitute is perhaps highlighted by the government's closing argument, in which it urged the trial court to give limited weight to Palacios's testimony since he "was unable to see how [Sanchez] did on the test, to hear what she said, to see the position that they were done in." The trial court did so, stating that Palacios "listened to the direct examination [of Carll] and he formulated some concerns based upon what he heard of the direct, but he also indicated, based upon what he didn't say, that the officer in some significant ways also conducted the tests in appropriate fashion."

In evaluating the issue of prejudice, we are mindful that Palacios was able to opine, based on what he heard on the direct examination of Carll and buttressed by

the "facts" recited by the defense counsel from Carll's cross-examination, that Carll had not properly administered at least some of the tests. However, we are also mindful that the defendant was deprived of further opportunity to evaluate Carll's methodology directly and to point out any additional flaws as Palacios testified. In addition, the defendant was deprived of the use of her expert to meaningfully assist counsel in the conduct of the cross-examination of Carll. The trial court was left with, and credited, Carll's self-assurance that he had basically used proper methodology.

As the trial court recognized, the government's proof was far from compelling. It is with all these considerations in mind that we turn to the task of evaluating prejudice.

> In doing so, we must look at the "totality of the circumstances" and decide whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Only if the error "jeopardized the fairness of the proceeding as a whole," or had a "substantial impact upon the outcome" of the case, may we reverse the judgment. [*James W.*] *Johnson*[, *supra*], 398 A.2d [at] 366.

*Goines v. United States*, 905 A.2d 795, 802 (D.C. 2006) (parallel citation omitted);

*accord In re L.C.*, 92 A.3d 290, 299-300 (D.C. 2014); *King v. United States*, 75

A.3d 113, 120 (D.C. 2013); *Heath v. United States*, 26 A.3d 266, 281 (D.C. 2011);

*Russell v. United States*, 17 A.3d 581, 588-89 (D.C. 2011); *In re L.L.*, 974 A.2d

859, 865 (D.C. 2009); *Pannu v. Jacobson*, 909 A.2d 178, 199 (D.C. 2006); *Mercer

v. United States*, 724 A.2d 1176, 1194 (D.C. 1999).

 

Having done so, we reverse.[3]

 

*So ordered.*

---

[3] Sanchez also asserts that the trial judge's "apparent advocacy" violated her due process rights. *See Haughton v. Byers*, 398 A.2d 18, 20-21 (D.C. 1979); *see also Knapp v. Kinsey*, 232 F.2d 458, 465-66 (6th Cir. 1956). In addition to the *sua sponte* sequestration of Palacios, Sanchez points to what she claims was excess questioning of defense witnesses. *See Haughton*, *supra*, 398 A.2d at 21. Likewise, she complains about the judge's comments about the utility, or lack thereof, of Lappas's testimony on "retrograde extrapolation," as well as her suggestion to Palacios that he was merely "second guessing" Carll. We need not decide, and do not decide, whether these matters provide independent grounds for reversal. Likewise, we need not decide, and do not decide, Sanchez's Confrontation Clause claim arising from the court's *sua sponte* limitation of her cross-examination of Carll for bias.